Matter of Lorna Y. v Jeffrey Z. (2020 NY Slip Op 03956)





Matter of Lorna Y. v Jeffrey Z.


2020 NY Slip Op 03956


Decided on July 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 16, 2020

527297

[*1]In the Matter of Lorna Y., Petitioner,
v
Jeffrey Z., Appellant. (And Four Other Related Proceedings.)

Calendar Date: June 12, 2020

Before: Garry, P.J., Egan Jr., Mulvey, Aarons and Colangelo, JJ.


Ciano J. Lama, Ithaca, for appellant.
Kathleen A. Sullivan, Ithaca, attorney for the child.



Egan Jr., J.
Appeal from an order of the Family Court of Tompkins County (Cassidy, J.), entered July 24, 2018, which, in five proceedings pursuant to Family Ct Act articles 6 and 8, denied respondent's motion to restore to the calendar his motion to vacate a prior order.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a child (born in 2014). In January 2015, the mother filed a custody petition, seeking sole legal and physical custody of the child, and a family offense petition, alleging that the father was verbally, physically and emotionally abusive towards her and engaged in a pattern of erratic and harassing behavior such that she feared for both her and the child's safety.[FN1] The father answered and simultaneously filed his own petition seeking legal and physical custody of the child, as well as a family offense petition, alleging that the mother verbally and physically assaulted him. The mother subsequently filed two amended custody petitions, to which the father replied. On the date of the scheduled fact-finding hearing, Family Court granted a motion by the father's counsel to withdraw as counsel and the matter was adjourned until November 9, 2015, with the court specifically informing the parties that no further adjournments of the fact-finding hearing would be granted.[FN2] The mother thereafter filed a third amended custody petition requesting permission to relocate to California with the child. On the morning of the November 9, 2015 fact-finding hearing, the father failed to appear. Family Court found the father to be in default, dismissed the father's petitions, without prejudice, and, following an inquest, entered a default judgment, granting the mother sole legal and physical of the child, as well as her application to relocate to California with the child.[FN3] Family Court also issued stay-away orders of protection on both petitions in favor of the mother and the child, with the custody order of protection scheduled to remain in effect until the child's eighteenth birthday or until further order of the court.[FN4]
Exactly one year later, the father moved to vacate the default judgment (see CPLR 5015 [a] [1]), contending, among other things, that his default should be excused as he had been "mentally, emotionally, and financially exhausted by [his] personal and business dealings." Family Court denied the father's motion to vacate the default judgment on the ground that it lacked personal jurisdiction over the mother;[FN5] however, it gave the father until July 31, 2017 to provide the court with proof of service that she was personally served with the motion, or the motion would be dismissed. The father hired a private investigation firm and successfully obtained two additional extensions of time from Family Court to serve the mother. However, in January 2018, more than a year since the father filed his motion to vacate the default, Family Court dismissed the motion given his inability to locate or serve the mother.
In April 2018, the father filed a second motion seeking to, among other things, restore to Family Court's calendar his prior motion to vacate the default judgment and, at the initial appearance on the motion, orally applied for substitute service on the mother. Family Court denied the father's request for substitute service on the ground that it was not confident that any of the proposed methods of service would provide actual notice of the proceedings to the mother. In May 2018, Family Court denied the motion to restore based upon the father's continuing inability to effectuate service on the mother; however, based upon the representation by the father's counsel that the mother had been actually served at her place of business in California pursuant to CPLR 308 (4), Family Court suspended entry of its May 2018 order and provided the father additional time to provide documentation regarding this alleged actual service. Following review of the father's documentation purporting to show that the mother had been served, Family Court denied the father's motion to restore the prior motion to the court's calendar on the ground that the father "has been unable to effectuate service on the mother in a manner that the [c]ourt is satisfied gave her actual notice of the proceedings"; in July 2018, the court entered an order to that effect. Family Court's July 2018 order also denied the underlying motion to vacate the default judgment on the merits. The father appeals.[FN6]
The father contends that he properly effectuated service on the mother in California (see Domestic Relations Law § 75-g; CPLR 308 [4]; 313) such that Family Court erred when it denied his motion to restore to the calendar his prior motion seeking to vacate the default judgment. We disagree.[FN7] Pursuant to Domestic Relations Law § 75-g (1), "[n]otice required for the exercise of jurisdiction when a person is outside this state
. . . must be given in a manner reasonably calculated to give actual notice." Domestic Relations Law § 75-g (1) (a) permits service by "personal delivery outside the state in the manner prescribed by [CPLR 313]," and, in turn, CPLR 313 permits an out-of-state person to be personally served "in the same manner as service is made within the state." Where, as here, the movant attempts to serve an individual outside this state, CPLR 308 (4) provides that personal service may be accomplished "by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business" (see Greene Major Holdings, LLC v Trailside at Hunter, LLC, 148 AD3d 1317, 1320-1321 [2017]; Serraro v Staropoli, 94 AD3d 1083, 1084 [2012]). Ultimately, it is the movant's burden to establish that personal jurisdiction has been acquired over the person to be served and, in determining whether the requisite due diligence in effectuating such personal service has been fulfilled, the focus is on the quality of such attempts, not the quantity (see Greene Major Holdings, LLC v Trailside at Hunter, LLC, 148 AD3d at 1320-1321; McSorley v Spear, 50 AD3d 652, 653-654 [2008]). Further, diligent efforts need to be made to verify or confirm that the out-of-state business or home address is the proper address sufficient to give actual notice (see Maines Paper & Food Serv. Inc. v Boulevard Burgers Corp., 52 AD3d 1150, 1151 [2008]; State of N.Y. Higher Educ. Servs. Corp. v Sparozic, 35 AD3d 1069, 1070-1071 [2006], lv dismissed 8 NY3d 958 [2007]).
Here, the father attempted to serve the mother by "affix and mail" service by affixing a copy of the motion and supporting papers in a conspicuous place at an address located at 415 Bellevue Avenue in Oakland, California based upon information indicating that the mother had incorporated a limited liability company using this address and was listed as the agent and executive of the limited liability company on the corresponding certificate of incorporation filed with the California state government. Although the father submitted affidavits of service from two process servers demonstrating that numerous attempts were made to effectuate personal service on the mother at this address, none of the process servers ever actually confirmed that the mother used this address as her actual place of business, dwelling place or usual place of abode (see CPLR 308 [4]).
The process servers provided affidavits of service indicating that, on eight separate occasions, they knocked on the door of the address provided but no one ever answered the door, nor was there any indication of activity within the unit. The mother's name was not on the mailbox or intercom for the unit and one process server separately drove "by the building at night on four different occasions and [never saw] any lights on in [the unit]." The second process server indicated that he spoke with a parcel delivery driver who did not remember ever delivering any packages to the mother or her business at that address, and the building manager of the property did not recognize the mother in a photograph that was shown to him. Further, although the private investigation firm that the father previously hired to locate the mother provided a list of 13 possible addresses where the mother may be found, the Bellevue Avenue address was not one of them, nor was any credible evidence presented demonstrating that the mother was actively or intentionally attempting to evade service. Accordingly, despite being provided nearly two years to locate and serve the mother, the father failed to provide any independent verification that she did business or resided at this Bellevue Avenue address or that personal service would "give actual notice" of the motion to the mother (Domestic Relations Law § 75-g [1]). As such, we find that Family Court appropriately denied the father's motion to restore for lack of personal jurisdiction (see CPLR 308 [4]; 313; Domestic Relations Law § 75-g [1]; Coley v Gonzalez, 170 AD3d 1107, 1108-1109 [2019]; Greene Major Holdings, LLC v Trailside at Hunter, LLC, 148 AD3d at 1320-1321; Serraro v Staropoli, 94 AD3d at 1084; compare Maines Paper & Food Serv. Inc. v Boulevard Burgers Corp., 52 AD3d at 1151), and we find no error in Family Court refusing to grant a further extension of time to serve the mother (see CPLR 306-b; Leader v Maroney, Ponzini & Spencer, 97 NY2d 95, 104-106 [2001]; Mead v Singleman, 24 AD3d 1142, 1143 [2005]).
Additionally, as Family Court never obtained personal jurisdiction over the mother, it lacked jurisdiction to render a decision on the merits of the father's underlying motion to vacate the default judgment and, therefore, we need not address the father's contention challenging the merits thereof (see CPLR 5015 [a] [1]). The father's remaining contentions, to the extent not specifically addressed, have been reviewed and found to be unavailing.
Garry, P.J., Mulvey, Aarons and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The father allegedly kicked the mother and the child out of the family residence in January 2015 and, thereafter, the mother and the child moved into a shelter for victims of domestic violence.

Footnote 2: In the interim, the mother filed an order to show cause seeking to suspend the father's visitation pending the outcome of the fact-finding hearing. The father then filed, pro se, his own petition seeking temporary custody of the child pending the outcome of Family Court proceedings. At an October 1, 2015 court appearance, Family Court temporarily suspended the father's visitation, continued an order granting the mother temporary legal and physical custody of the child and reiterated to the parties that it would not consider any further adjournments of the scheduled fact-finding hearing.

Footnote 3: Five witnesses testified at the inquest, including the mother, who provided testimony regarding the father's alleged domestic violence, manic and erratic behavior, frequent and excessive use of alcohol and diverted prescription medication, the dangerous conditions that persisted at the residence he shared with the mother and the child, and numerous other incidents reflecting negatively on his fitness as a parent.

Footnote 4: The father appealed Family Court's decision; however, said appeal was later dismissed by this Court.

Footnote 5: Initially, the father served the mother's prior counsel with the motion; however, the mother's prior counsel refused to accept service of the motion on her behalf, indicating that she no longer represented the mother and had not been in contact with her since the conclusion of the prior custody proceedings in 2015.

Footnote 6: The mother did not file a brief on this appeal.

Footnote 7: Initially, although the mother and the child have relocated to California, since the father, as the noncustodial parent, continues to reside in New York and all the underlying judgments and orders relating to this case were entered in this state, including the initial custody order that is the subject of the instant motion, at no point did Family Court relinquish exclusive, continuing jurisdiction over this matter (see Domestic Relations Law § 76-a [1] [a]; Matter of Burdick v Boehm, 148 AD3d 1439, 1440-1441 [2017]).